# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CT-01181-SCT

*JEREMY THORNHILL*

*v.*

*WALKER-HILL ENVIRONMENTAL AND*
*ZURICH AMERICAN INSURANCE COMPANY*
*OF ILLINOIS*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/11/2020 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| TRIAL COURT ATTORNEYS: | NATHAN L. BURROW |
| | AMANDA HILL FRITZ |
| | OLIVIA YEN TRUONG |
| | RICHARD EDWARD KING |
| | EDWARD DREW VOELKER, IV |
| | DORIS THERESA BOBADILLA |
| | RAYNETRA LASHELL GUSTAVIS |
| | ROGEN K. CHHABRA |
| | SUZANNE CARLISLE HUDSON |
| | WILLIAM BIENVILLE SKIPPER |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RAYNETRA LASHELL GUSTAVIS |
| | ROGEN K. CHHABRA |
| | DARRYL MOSES GIBBS |
| ATTORNEYS FOR APPELLEES: | OLIVIA YEN TRUONG |
| | DORIS THERESA BOBADILLA |
| | NATHAN L. BURROW |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE MARION COUNTY CIRCUIT COURT IS REVERSED, AND THE CASE IS REMANDED - 08/25/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In July 2017, Jeremy Thornhill said that he had injured his back while working. "He sought workers' compensation benefits from [his employer,] Walker-Hill and its insurance carrier, Zurich American Insurance Company of Illinois (collectively, 'Employer/Carrier'), but the Employer/Carrier denied that Thornhill had sustained a compensable injury." *Thornhill v. Walker-Hill Env't*, No. 2020-CA-01180-COA, 2021 WL 4888440, at *1 (Miss. Ct. App. Oct. 19, 2021). Ultimately, the parties agreed to compromise and settled pursuant to Mississippi Code Section 71-3-29 (Rev. 2021). Thornhill submitted the settlement to the Mississippi Workers' Compensation Commission for approval. After examining the application, the Commission approved the settlement and dismissed Thornhill's case with prejudice. "Pursuant to the settlement, Thornhill signed a general release[,]" which reserved his right to pursue a bad faith claim. *Thornhill*, 2021 WL 4888440, at *2.

¶2.     Believing he had exhausted his administrative remedies, Thornhill filed a bad faith suit against the Employer/Carrier in the Circuit Court of the Second Judicial District of Jones County. His case later was transferred to the Circuit Court of Marion County. There, the Employer/Carrier filed a motion to dismiss, "arguing that Thornhill had not exhausted administrative remedies—and that the circuit court lacked jurisdiction—because the Commission never made a factual finding that he was entitled to workers' compensation benefits." *Id.* at *1. The trial court granted the motion on the basis that it did not have

2

jurisdiction because Thornhill had not exhausted his administrative remedies, inasmuch as "there [had] been no finding of liability and that Thornhill suffered compensable injuries."

¶3.     The Court of Appeals reversed and remanded, finding that Thornhill had exhausted his administrative remedies and that the circuit court had jurisdiction to hear his bad faith claim. *Id.* at *6. The appeals court determined that "Thornhill exhausted his administrative remedies because he fully and finally settled his workers' compensation claim against the Employer/Carrier, the Commission approved the settlement, and there is nothing left pending before the Commission."*Id.* (citing ***Miss. Power & Light Co. v. Cook***, 832 So. 2d 474, 480 (Miss. 2002)).

¶4.     We affirm the decision of the Court of Appeals. The judgment of the Marion County Circuit Court is reversed, and the case is remanded to that court for further proceedings.

**STATEMENT OF FACTS**

¶5.     The Court of Appeals related the facts as follows:

> Thornhill worked at Walker-Hill as a supervisor driller. He alleges that he injured his back while attempting to move a heavy rig on July 5, 2017. He alleges that he reported his injury to his supervisor the following day, but Walker-Hill denies this allegation. On July 7, Walker-Hill asked Thornhill to take a drug test. Thornhill went to the testing facility and provided a sample, but the sample was reportedly "cold" (i.e., below the minimum acceptable temperature for testing). Thornhill says that he tried to produce a second sample but was unable to do so, and he left without providing a second sample. Walker-Hill says that Thornhill did not return to work for several days and was fired for refusing to submit to a drug screen. Thornhill began seeing a doctor for his back injury, and the doctor eventually recommended that Thornhill undergo back surgery.
>
> In October 2017, Thornhill filed a petition to controvert with the Commission. In November 2017, the Employer/Carrier filed an answer in which they admitted both that Thornhill's injury arose out his employment and

3

that they had received proper notice of the injury. However, the Employer/Carrier denied that Thornhill was entitled to benefits, citing his refusal to complete the drug test. In April 2018, the Employer/Carrier filed an amended answer in which they denied that Thornhill had suffered any work-related injury and denied that they had received proper notice of the injury.[1]

Following a hearing, an administrative judge ordered Thornhill to undergo an independent medical examination (IME) by Dr. Robert McGuire to "determine [Thornhill's] current condition and need for medical treatment." In his subsequent report, Dr. McGuire noted that Thornhill had been injured at work in 2015 but was able to return to work and function normally following conservative treatment. Dr. McGuire concluded that the surgery recommended by Thornhill's treating physician was "absolutely appropriate." Dr. McGuire concluded that Thornhill needed back surgery because of his injury in July 2017, which had "substantially aggravated [his] preexisting condition." Finally, Dr. McGuire concluded that Thornhill had not reached maximum medical improvement (MMI) and would not reach MMI until approximately six months post-surgery.

*Id.* at *1-2.

¶6. After Thornhill had undergone the IME and Dr. McGuire had published his report, the Employer/Carrier and Thornhill agreed to mediation. During mediation, the parties compromised and agreed to settle the claim for $145,000. "In July 2019, Thornhill filed an

---

[1]    The Employer/Carrier state that their attorney in the workers' compensation case initially believed that the injury occurred on the job and that Walker-Hill received notice because the attorney thought that Thornhill's July 7 drug test was a post-accident drug test. But the Employer/Carrier now assert that "the drug test was not a post-accident drug screen" and that Thornhill "never reported a work injury . . . prior to filing his [p]etition to [c]ontrovert." The Employer/Carrier say that they filed an amended answer in the workers' compensation case after their attorney was advised of his mistake. However, the Employer/Carrier's amended answer continued to assert that Thornhill was not "entitled to benefits due to his refusal to undergo drug testing."

*Thornhill*, 2021 WL 4888440, at *1 n.1 (alterations in original).

application, which the Employer/Carrier joined, for the Commission to approve their compromise settlement." *Id.* at \*2. The application, which is titled "Application For Approval of Compromise Settlement," says, in relevant part:

> [T]he employer and carrier have contested the compensability of claimant's claim. Claimant would show unto the Commission that [he] has contended, and now contends, that he is entitled to compensation, whereas said employer and carrier have contended, and now contend, that claimant is not entitled to any medical benefits or compensation, and in no event, to the amount thereof demanded by the claimant. Accordingly, in order to purchase peace and to avoid additional costs associated with the further prosecution of this claim and *as a complete and total compromise of all issues, including compensability, the said employer and carrier have offered to pay claimant the sum of $145,000,* without discount, in complete settlement of all claims of every kind and nature. As a material part of this compromise settlement, the claimant has agreed to be responsible for the payment of any and all medical charges whether known or unknown by the claimant and/or the employer and carrier.
>
> . . . .
>
> Claimant further shows that this request and application are made *pursuant to the provisions of Section 71-3-29 of Mississippi Code Annotated* (1972), and that this case comes within the purview of such section for the reason that compensability *vel non* of claimant's injury is in issue and that it is impossible to determine the exact extent of the disability suffered by claimant, if any. Thus, it would be to the best interest of claimant for the Commission to allow said employer and carrier to settle and compromise said differences herein with claimant, and to allow said payment to be made in full discharge of all responsibility of said employer and carrier under the terms of the Mississippi Workers' Compensation Act.

(Emphasis added.) On July 16, 2019, after "sufficiently examin[ing] [Thornhill's] proposal, and being fully advised" on the merits, the Commission determined that the compromise settlement was "in the best interest of the claimant[.]" As a result, the Commission entered

5

an order approving the settlement and dismissed the case with prejudice. The Commission's

order granting the compromise settlement specifically stated, in relevant part:

> The Commission finds that the claimant, on the one hand, and the employer and carrier, on the other hand, have a disagreement as to the cause and to the extent of disability sustained by the claimant, if any, and that the case is a proper one for disposition under the provisions of Section 71-3-29 of Mississippi Code Annotated (1972).

> It is, therefore, ordered that said compromise settlement should be, and the same is hereby, approved and that [Employer/Carrier] shall pay to Jeremy Thornhill, claimant, the sum of $145,000, without discount, in complete settlement of all claims of every kind and nature. This lump sum is compensation for permanent impairment that will affect the claimant for the rest of his life. . . .

> It is further ordered that upon payment of said sum to claimant, said employer and carrier . . . shall stand fully and completely discharged of any other or further liability to the claimant, or otherwise, for, arising out of, or connected with the alleged injury sustained by Jeremy Thornhill on or about July 5, 2017, or of the effects thereof, and that this matter be, and it is hereby, dismissed with prejudice. Further, the claimant is hereby authorized and empowered to execute any receipt, release, or other instrument required by said employer and carrier to evidence their release, acquittal, and discharge herein.

¶7. "Pursuant to the settlement, Thornhill signed a general release that released the

Employer/Carrier from all claims arising out of or connected with this alleged on-the-job

injury." *Thornhill*, 2021 WL 4888440, at *2. The release was drafted by the Employer/Carrier

and contained the following language:

> [Thornhill] reserves and does not release, however, the right to bring a claim for bad faith against any party and the parties agree administrative remedies in [Thornhill's] workers' compensation claim have been fully and finally exhausted.

¶8. On January 15, 2020, Thornhill filed a complaint against the Employer/Carrier in the

Circuit Court of the Second Judicial District of Jones County, asserting a bad faith claim. In

6

response, the Employer/Carrier filed a motion to dismiss based upon improper venue, or, alternatively, to transfer venue based upon *forum non conveniens*. The trial court granted the Employer/Carriers' motion, and the case was transferred to the Circuit Court of Marion County, Mississippi.

¶9. On August 7, 2020, Employer/Carrier filed a motion to dismiss pursuant to Mississippi Rule of Civil Procedure 12(b)(6), arguing that Thornhill had failed to exhaust his administrative remedies before the Mississippi Workers' Compensation Commission. The Employer/Carrier asserted that he failed to exhaust his administrative remedies because "there was never a determination that [Thornhill] was entitled to workers' compensation benefits," which is "a factual determination that is within the exclusive jurisdiction of the Commission." Specifically, the Employer/Carrier argued that "[b]ecause [the Employer/Carrier] [had] denied that [Thornhill] sustained a compensable injury and he [had] settled his workers' compensation claim on [a] disputed basis without the Commission finding that his claim was compensable," the bad faith claim should be dismissed.

¶10. The trial judge granted the motion to dismiss, "reason[ing] that prior to filing suit for a bad-faith denial of workers' compensation benefits, a plaintiff must first obtain a ruling from the Commission that he is entitled to the benefits at issue." ***Thornhill***, 2021 WL 4888440, at *2. The trial judge determined that because "there ha[d] been no finding of liability and that Thornhill suffered compensable injuries[,] . . . Thornhill ha[d] not exhausted his administrative remedies, and a bad faith lawsuit [was] premature."

¶11. Thornhill appealed and raised two issues: (1) "that the compromise settlement exhausted his administrative remedies as a matter of law and that he may proceed on his bad-faith claim in the circuit court[,]" and (2) "that the Employer/Carrier should be estopped from asserting an exhaustion-of-remedies argument because the Employer/Carrier drafted a release that not only reserved Thornhill's right to bring a bad-faith lawsuit but also specifically provided that Thornhill's 'administrative remedies . . . [had] been fully and finally exhausted.'" *Thornhill*, 2021 WL 4888440, at \*2 (second and third alterations in original). The Court of Appeals determined that "the Commission's approval of the compromise settlement exhausted Thornhill's administrative remedies and that Thornhill's bad-faith lawsuit may go forward in the circuit court" and that "it [was] unnecessary to address [Thornhill's] estoppel argument" because the first issue was dispositive. *Id.* Accordingly, the Court of Appeals reversed the circuit judge's decision granting the Employer/Carrier's motion to dismiss and remanded the case for further proceedings. *Id.*

¶12. On February 14, 2022, Employer/Carrier filed a petition for writ of *certiorari*, which we granted. The Employer/Carrier argues that the Court of Appeals' decision conflicts with Mississippi precedent. Specifically, it argues that the decision goes against the Commission's exclusive jurisdiction to determine an employee's entitlement to compensation benefits and that "the Court of Appeals now appears to suggest a settlement, standing alone, is all that is necessary for Plaintiff to proceed with a bad-faith claim." In its petition, the Employer/Carrier avers that "the fundamental issue [in this case] is whether an employee can assert a claim for bad-faith denial of workers' compensation benefits without ever obtaining

8

a finding from the Commission—express or implied—that such benefits were ever owed under the Act."

¶13.    In response, Thornhill filed a supplemental brief pursuant to Mississippi Rule of Appellate Procedure 17(h), defending the decision of the Court of Appeals. Thornhill claims that the decision does not conflict with Mississippi precedent and that a "full and final settlement" exhausts administrative remedies because nothing is left for the Commission to decide and rule upon and there is "no risk that a jury will usurp the Commission's jurisdiction or return a verdict that conflicts with any finding of the Commission."

## STANDARD OF REVIEW

¶14.    This Court has held that

> "The standard of review for a trial court's grant or denial of a motion to dismiss is de novo." *Burch v. Illinois Cent. R.R. Co.*, 136 So. 3d 1063, 1064-65 (Miss. 2014)). "A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." *Rose v. Tullos*, 994 So. 2d 734, 737 (Miss. 2008). "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Scaggs v. GPCH-GP, Inc.*, 931 So. 2d 1274, 1275 (Miss. 2006).

*Weill v. Bailey*, 227 So. 3d 931, 934-35 (Miss. 2017). Also, "[q]uestions of law are reviewed *de novo*." *Robichaux v. Nationwide Mut. Fire Ins. Co.*, 81 So. 3d 1030, 1035 (Miss. 2011) (citing *Lowe v. Lowndes Cnty. Bldg. Inspection Dep't*, 760 So. 2d 711, 712 (Miss. 2000)).

## DISCUSSION

¶15.    The Employer/Carrier argues that "the fundamental issue [in this case] is whether an employee can assert a claim for bad-faith denial of workers' compensation benefits without

ever obtaining a finding from the Commission—express or implied—that such benefits were ever owed under the Act." According to the Employer/Carrier, the Court of Appeals' opinion goes against the exclusive jurisdiction of the Commission and now allows settlements under Mississippi Code Section 71-3-29, *i.e.*, compromise settlements, to "constitute[] an entitlement of benefits sufficient to allow the employee to challenge the denial of his or her claim before a jury in circuit court." We view the issue as: does the Commission's approval of a settlement, resulting in compensation being paid to the claimant, constitute a finding that exhausts one's administrative remedies, thereby allowing a plaintiff to proceed with a bad faith claim?

¶16. "We recognize that our precedent requires only a determination that a plaintiff is 'entitled' to *compensation* before a bad-faith action may be brought."[2] ***Bullock v. AIU Ins. Co.***, 995 So. 2d 717, 723 (Miss. 2008) (emphasis added) (citing ***Walls v. Franklin Corp. (Walls I)***, 797 So. 2d 973, 977 (Miss. 2001) ("[A claimant] [can]not maintain a bad faith action for refusal to pay for disputed medical services and supplies absent the Commission's prior determination that those services and supplies were reasonable and necessary.")); *see* ***Dial v. The Hartford Accident and Indem. Co.***, 863 F.2d 15, 17 (5th Cir. 1989) ("[The plaintiff] must exhaust the administrative remedy provided and establish his entitlement to workers' compensation benefits in that process prior to commencing a court action for tort damages for the same failure to pay his claim."); *see also* ***McCain v. Nw. Nat'l Ins.***, 484 So.

---

[2]The Workers' Compensation Act defines compensation as "the money allowance payable to an injured worker or his dependents as provided in this chapter, and includes funeral benefits provide therein." Miss. Code Ann. § 71-3-3(j) (Rev. 2021).

2d 1001, 1002 (Miss. 1986) ("A prerequisite to the award of punitive damage is the determination that the plaintiff is entitled to contractual damages." (citing *State Farm Fire & Cas. Co. v. Simpson*, 477 So. 2d 242, 242 (Miss. 1985)). Simply, "claimants are required 'to exhaust their administrative remedies, i.e., obtain a final judgment from the Commission prior to instituting a bad-faith action for failure to pay benefits pursuant to the Workers' Compensation Act.'" *Harper v. Cal-Maine Foods, Inc.*, 43 So. 3d 401, 403 (Miss. 2010) (quoting *Harper v. Cal-Maine Foods, Inc.*, 43 So. 3d 457, 460 (Miss. Ct. App. 2009), *rev'd*, *Harper*, 43 So. 3d 401).

¶17.    Thornhill asserted that *Cook*, 832 So. 2d 474, "gives clear guidance that settlement is also a viable way to exhaust [his administrative] remedy" because "[t]he question is and should be whether the underlying case is finished, not how it was finished." But the Employer/Carrier argued that *Cook* was distinguishable because the claimant in *Cook* settled his claim pursuant to Mississippi Code Section 71-3-37(10) (Rev. 2021); Thornhill settled his claim pursuant to Mississippi Code Section 71-3-29. The Court of Appeals found in *Cook* that the Mississippi Supreme Court was mistaken in its belief that the settlement had been approved pursuant to Section 71-3-37(10), when the court's records showed that "the settlement in *Cook* was also a compromise/9(i) settlement."[3] *Thornhill*, 2021 WL 4888440, at *4. After reviewing our records, we agree. It is clear that we mislabeled the type of settlement in *Cook*; the settlement was indeed a compromise settlement pursuant to Code

---

[3]*See* 9 Jeffrey Jackson, Mary Miller & Donald Campbell, *Encyclopedia of Mississippi Law* § 76:165 (2d ed. April 2022) ("Compromise settlements are commonly known as '9(i) settlements' because the statute governing such settlements was known as section 9(i) in the original Mississippi Workers' Compensation Act of 1948.").

Section 71-3-29. Both Cook's application to the Commission and the Commission's order approving the settlement contained the term "9(i) compromise settlement" in both documents' titles, and both documents contained language referencing section 9(i) of the Workers' Compensation Act throughout the bodies of the two documents. Therefore, we erred in *Cook* by relying on Section 71-3-37(10).

¶18.    But the mislabeling of the type of settlement does not disturb our findings in *Cook*. We held that Cook had exhausted his administrative remedies when the Commission had approved his settlement claim and when nothing was left pending before the Commission; therefore, Cook's bad faith lawsuit could continue. *Cook*, 832 So. 2d at 480. We find that this holding still is appropriate for compromise settlements under Section 71-3-29 based on our analysis below.

¶19.    The Employer/Carrier claims that Thornhill "indisputably never presented his claim to the Commission for a determination of whether his alleged injury was compensable[.]" Also, the trial judge determined that there had been no finding by the Commission that "Thornhill [had] suffered compensable injuries." We find that the settlement, which resulted in the payment of compensation to Thornhill, removed such requirements for the purposes of Thornhill exhausting his administrative remedies. Once the parties agreed to enter into a compromise settlement, Thornhill was required to submit an application to approve the settlement before the Commission. In his application, Thornhill stated that

> Claimant would show unto the Commission that [he] has contended, and now contends, that he is entitled to compensation, whereas said employer and carrier have contended, and now contend, that claimant is not entitled to any medical benefits or compensation, and in no event, to the amount thereof

12

demanded by the claimant. Accordingly, in order to purchase peace and to avoid additional costs associated with the further prosecution of this claim and *as a complete and total compromise of all issues, including compensability, the said employer and carrier have offered to pay claimant the sum of $145,000.00,* without discount, *in complete settlement* of all claims of every kind and nature. . . .

. . . .

Claimant further shows that this request and application are made pursuant to the provisions of Section 71-3-29 of Mississippi Code Annotated (1972), and that this case comes within the purview of such action for the reason that compensability *vel non* of claimant's injury is in issue and that it is impossible to determine the exact extent of the disability suffered by claimant, if any. Thus, *it would be to the best interest of claimant* for the Commission to allow said employer and carrier to settle and compromise said differences herein with claimant, and to allow said payment to be made in full discharge of all responsibility of said employer and carrier under the terms of the Mississippi Workers' Compensation Act.

(Emphasis added.) The Commission considered Thornhill's application for settlement, which was for a "complete and total compromise of all issues[.]" When the Commission made its decision, despite disagreement between the parties "as to the cause and to the extent of disability sustained by the claimant," the Commission approved the settlement and its agreement to compensate Thornhill as being in Thornhill's "best interest."

¶20.   Also, Section 71-3-29 empowers the Commission to approve a lump sum payment in order to settle a case "where it is not possible to determine the exact extent of disability[.]" Miss. Code Ann. § 71-3-29. But the Commission "shall not" approve the compromise settlement unless it is "determined to be in the best interest of the injured worker[.]" *Id.* Additionally, Rule 2.15 of the Mississippi Workers' Compensation Commission provides that "[i]n every case of compromise settlement, the proposed settlement will be explored and

13

medical reports will be examined to determine if the amount of the proposed settlement appears fair and reasonable." Miss. Workers' Comp. Comm'n Proc. R. 2.15, https://www.mwcc.ms.gov/pdf/MWCCGeneralandProceduralRules5.pdf (last viewed Aug. 5, 2022). Rule 2.15 provides also that the Commission "shall not" approve the settlement if it is "(a) not accurately reported" and that the Commission "will approve" the settlement if "(a) the underlying facts, terms, and amount of the settlement are accurately reported[.]" *Id.* The Commission's order explained that the Commission had been "fully advised in the premises" and had "sufficiently examined" the application, before approving the compromise settlement as being in Thornhill's best interest. A settlement that has been presented to the Commission and approved by the Commission entitles the claimant to receive the compensation to which the parties agreed. Once a settlement has been approved by the Commission, and, as here, has been included in its final order that "[t]his lump sum is compensation for permanent impairment[,]" nothing remains for the Commission to decide. Thornhill's claim was dismissed with prejudice, subject only to his right to sue the Employer/Carrier for bad faith. Under these circumstances, the claimant is deemed to have exhausted his administrative remedies. *See* ***Bullock***, 995 So. 2d at 723 ("We recognize that our precedent requires only a determination that a plaintiff is 'entitled' to compensation before a bad-faith action may be brought." (quoting ***Walls I***, 797 So. 2d at 973)).

¶21.    The Employer/Carrier continues to claim that the circuit court lacks jurisdiction to consider Thornhill's claim for damages because the Commission has exclusive jurisdiction to determine whether a person is entitled to compensation. *See* ***Thornhill***, 2021 WL

14

4888440, at *6. This Court has recognized that "[t]he Legislature vested full responsibility" in the Commission to administer the Workers' Compensation Act. **Walker Mfg. Co. v. Cantrell**, 577 So. 2d 1243, 1246 (Miss. 1991) (citing Miss. Code Ann. § 71-3-1 to -111 (1972)). We have recognized also that under Mississippi Code Section 71-3-47, "the Commission [has] the duty of prescribing 'the details of practice and procedure in the settlement and adjudication of claims.'" **Id.** at 1246 (quoting Miss. Code Ann. § 71-3-47 (1972)). In past cases, jurisdictional issues arose "because a claimant was attempting to litigate his bad-faith claim while his underlying case was still pending before the Commission." **Thornhill**, 2021 WL 4888440, at *6; *see* **Walls I**, 797 So. 2d at 975-77; **Hardaway v. Howard Indus., Inc.**, 211 So. 3d 718, 720-22 (Miss. Ct. App. 2016); **Walls v. Franklin Corp. (Walls II)**, 177 So. 3d 1156, 1163 (Miss. Ct. App. 2015). However, in **Cook**, this Court distinguished Cook's case from prior bad faith cases, such as **Walls II**, by recognizing that "Cook's settlement claim had been approved by the Commission and nothing was left pending before them." **Cook**, 832 So. 2d at 480. As pointed out by the Court of Appeals, "[t]he essential concern in that scenario is that 'it would be "frighteningly conceivable" that a jury could find the [underlying workers' compensation] claim was compensable and award punitive damages for bad-faith conduct, even though the Commission—vested with exclusive jurisdiction—later found the claim was not compensable.'" **Thornhill**, 2021 WL 4888440, at *6 (alterations in original) (quoting **Walls II**, 177 So. 3d at 1163). Additionally, in a bad faith claim against an insurer, one "must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the

insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." ***Liberty Mut. Ins. Co. v. McKneely***, 862 So. 2d 530, 533 (Miss. 2003) (citing ***State Farm Mut. Auto. Ins. Co. v. Grimes***, 722 So. 2d 637, 641 (Miss. 1998)). Therefore, "there is no risk that a jury will usurp the Commission's jurisdiction or return a verdict that conflicts with a finding of the Commission." ***Thornhill***, 2021 WL 4888440, at *6. Here, Thornhill's settlement had been approved by the Commission, and nothing was left pending before the Commission. The circuit court has jurisdiction to hear Thornhill's bad faith claim.

### CONCLUSION

¶22.    Because Thornhill's settlement was approved and because he had no further business with the Commission, we find that he had exhausted his administrative remedies when his claim before the Commission was concluded by settlement. The trial court committed reversible error by granting the motion to dismiss. We find that the circuit court has jurisdiction to hear Thornhill's bad faith claim because there is nothing left pending before the Commission and because Thornhill's compromise settlement has been approved by the Commission. Therefore, we affirm the Court of Appeals' decision. The judgment of the Marion County Circuit Court is reversed, and the case is remanded to the Marion County Circuit Court for further proceedings.

¶23.    **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE MARION COUNTY CIRCUIT COURT IS REVERSED, AND THE CASE IS REMANDED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

16